UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HORACIO FUENTES VALADEZ,

Petitioner,

v.

BRUCE SCOTT et al.,

Respondents.

CASE NO. 2:26-cv-03666-LK

ORDER GRANTING HABEAS PETITION

This matter comes before the Court on Petitioner Horacio Fuentes Valadez's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons stated below, the Court grants the petition.[1]

## I. BACKGROUND

Petitioner is a citizen of Mexico who entered the United States without admission or parole around 2000 or 2001. Dkt. No. 6 at 2. In 2001, he was convicted of minor in possession of liquor in violation of Revised Code of Washington Section 66.44.270(2). Dkt. No. 1-1 at 33. In June 2003, he was convicted of driving under the influence, reckless driving, and "Criminal Impersonation-1" in violation of Sections 46.61.502, 46.61.500, and former 9A.60.040(1)[2] of the

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

[2] The statute currently exists in substantially the same form, except the crime is now a felony. At the time of Petitioner's conviction, it was a gross misdemeanor. *See* H.B. 1689 Certification of Enrollment, *available at*

Revised Code of Washington. Dkt. No. 1-1 at 32–33. For the June 2003 charges, the Washington court sentenced him to 365 days, with 350 days suspended, and two years of supervised release. *Id.* at 32. In July 2003, he was convicted of "Possession of a Controlled Substance Schedule II" in violation of former Oregon Revised Statutes Section 475.992(4)(b). *Id.* at 16–18.[3] The Oregon court sentenced him to 18 months of drug-treatment probation and terminated the probation early in July 2004. Dkt. No. 1-1 at 17, 19.

On November 6, 2025, U.S. Immigration and Customs Enforcement ("ICE") Office of Enforcement and Removal Operations issued an arrest warrant for Petitioner. Dkt. No. 6 at 2–3. On April 8, 2026, ICE arrested Petitioner and transported him to the Northwest ICE Processing Center ("NWIPC"), where he remains detained. *Id.* at 3. ICE issued Petitioner a Notice to Appear ("NTA") charging him as removable pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as a noncitizen "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see also* Dkt. No. 5-3 at 2 (NTA); Dkt. No. 5-4 at 2 (IJ's order finding Petitioner inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)); Dkt. No. 5-1 at 3 ("current administrative charges" are under "212a6Ai"); *id.* at 5 (noting that the NTA charged him under "Section 212(a)(6)(A)(i)"); Dkt. No. 6 at 3 (same). Petitioner filed an EOIR 42-B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents, and appeared in immigration court after several continuances. Dkt. No. 6 at 3. The immigration judge ("IJ") found that Petitioner was not eligible for Cancellation of Removal, pretermitted his application for Cancellation of Removal, and ordered him removed from the United States to

---

https://lawfilesext.leg.wa.gov/biennium/1993-94/Pdf/Bills/Session%20Laws/House/1689.SL.pdf.

[3] The statute has since been amended and renumbered. In 2005, it was renumbered as Section 475.840; in 2011, it was renumbered as Section 475.752. The archived 2003 version of the statute is available online at: https://www.oregonlegislature.gov/bills_laws/archive/2003ors475.pdf.

Mexico. *Id.*; *see* Dkt. No. 5-4. On October 12, 2026, Petitioner appealed the IJ's decision to the Board of Immigration Appeals, where it remains pending. Dkt. No. 5-5.

On September 29, 2026, Petitioner filed a petition for a writ of habeas corpus. Dkt. No. 1. Respondents[4] filed a return, and Petitioner filed a traverse. Dkt. Nos. 4, 7.

## II. DISCUSSION

Petitioner contends that his detention should be governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention, not by Section 1226(c) or 1225(b), both of which mandate detention. Dkt. No. 1 at 2. He argues that none of his convictions trigger 8 U.S.C. § 1226(c)(1)(A) because the state crimes he was convicted of are not categorically similar to the crimes listed under the federal statute. *Id.* at 11–14. He further asserts that, even if the Court concludes that Section 1226(c) authorizes his detention, Fifth Amendment due process requires at a minimum that he receive an individualized bond hearing. *Id.* at 14–18. He requests immediate release, or in the alternative, a bond hearing which is recorded and at which "Respondents bear the burden of establishing by clear and convincing evidence that he is a flight risk or a danger to the community" and "the immigration judge considers his ability to pay and alternative conditions of supervision[.]" *Id.* Respondents counter that Petitioner is mandatorily detained under 8 U.S.C. § 1226(c), so his continued detention does not establish a due process violation. Dkt. No. 4 at 1.

### A. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi*, 542 U.S. at 525 (citing U.S. Const., Art I,

[4] Although Bruce Scott has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Hamdi v. Rumsfeld*, 542 U.S. 507, 535 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

§ 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). The Supreme Court has held that federal courts have jurisdiction to review a constitutional challenge to a noncitizen's detention under § 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Demore*, 538 U.S. at 523 (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Prudential Exhaustion Is Not Required**

Respondents assert that, before filing a habeas petition, Petitioner must first exhaust his claim that he is not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) before an immigration court. Dkt. No. 4 at 6–7; *see Demore*, 538 U.S. at 514 n.3 (explaining that petitioners have the right, in administrative immigration proceedings, to request a "*Joseph* hearing" to challenge whether they are covered by § 1226(c)). Petitioner contends that he was never provided

with "any ICE custody determination, Form I-286, or notice of a mandatory ground" for detention, and he could not challenge his mandatory detention without knowing what the grounds for it were, so exhaustion should be excused. Dkt. No. 7 at 7–8, *see* Dkt. No. 1 at 5–7.

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Id.* (quoting *Puga*, 488 F.3d at 815). Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as when requiring exhaustion causes undue prejudice, including prejudice caused by "an unreasonable or indefinite timeframe for administrative action," *McCarthy v. Madigan*, 503 U.S. 140, 146–47 (1992); or "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void," *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981); *see also Laing*, 370 F.3d at 1000.

Although it is true that detainees who are classified as mandatorily detained under Section 1226(c) may request a *Joseph* hearing to challenge their classification, *see Demore*, 538 U.S. at 514 n.3, "it makes little sense to require a petitioner to exhaust administrative remedies to challenge a classification under § 1226(c) when immigration authorities have not classified the petitioner that way." *M.J. v. Chestnut*, No. 1:26-CV-04775-MWJS, 2026 WL 2139762, at *4 (E.D. Cal. July 24, 2026); *see also J.F. v. Chestnut*, No. 1:26-CV-05341-MWJS, 2026 WL 2283104, at *3 (E.D. Cal. Aug. 8, 2026) (excusing exhaustion when "[n]othing in the record reflects that DHS

classified Petitioner as subject to mandatory detention under § 1226(c)," so there was no "agency classification to challenge"). Petitioner contends, and Respondents do not dispute, that he was never provided with a "ICE custody determination, Form I-286, or notice of a mandatory ground" for his detention. Dkt. No. 7 at 7. It is unclear how Petitioner could have meaningfully challenged his alleged mandatory detention—or even known he was entitled to a *Joseph* hearing—if he was never provided with notice of a mandatory ground of detention. In light of these unique circumstances, the Court elects to excuse prudential exhaustion here. *See Franco Pena v. Warden of the California City Det. Ctr.*, No. 1:26-CV-03922 (VC), 2026 WL 2524284, at *2 (E.D. Cal. Aug. 26, 2026) (excusing exhaustion where "the Government has not identified which subsection of § 1226(c) applies here," and noting that whereas "[i]n *Joseph*, immigration authorities charged the noncitizen in his Notice to Appear with a mandatory detention ground, thus enabling him to challenge that ground in immigration court," in *Franco Pena*, immigration authorities did not "charge[] petitioner with a mandatory detention ground, rather Petitioner was charged as 'an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General' pursuant to § 1182(a)(6)(A)(i)").

**C. Petitioner is Not Subject to Mandatory Detention**

As noted above, Petitioner claims that "Respondents have not identified in writing the subsection or subsections of § 1226(c) on which they rely, or the specific arrest, charge, admission, or conviction they contend triggers mandatory detention." Dkt. No. 1 at 10. Respondent's return asserts that Petitioner is "deportable and subject to mandatory detention under 8 U.S.C. § 1226(c)." Dkt. No. 4 at 5 (citing 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(B)(i)); *see also id.* at 6 ("Here, petitioner was removable by the mere reason of having committed an offense described in 8 U.S.C. § 1227(a)(2)(B)(i).").

Section 1226(c)(1) requires detention of certain noncitizens who have committed specified crimes:

> The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title, [or]
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]

8 U.S.C. § 1226(c)(1).

As Petitioner points out in his traverse, Dkt. No. 7 at 1, Section 1226(c)(1)*(B)*—cited by Respondents—is inapplicable because he was never admitted to the country. Rather, as the Notice to Appear makes clear, the Government has charged that Petitioner is a noncitizen "present in the United States who has not been admitted or paroled." Dkt. No. 5-3 at 2. He is therefore inadmissible, not deportable. *See, e.g., Ortega-Lopez v. Barr*, 978 F.3d 680, 682 (9th Cir. 2020) ("[A] person who physically entered the United States but was not admitted is subject to grounds of inadmissibility, rather than deportability, and has to bear the corresponding burden of proving admissibility. . . . [T]he substantive bases for excluding and deporting aliens [are] distinct and addressed in different statutory sections."); *Vasquez-Hernandez v. Holder*, 590 F.3d 1053, 1055 (9th Cir. 2010) ("An inadmissible alien is one who was not admitted legally to the United States and is removable under § 1182, whereas a deportable alien is in the United States lawfully and is removable under § 1227."); *Henriguez Espana v. Warden*, No. 1:26-CV-04166-DJC-AC, 2026 WL 2410568, at *1 n.1 (E.D. Cal. Aug. 18, 2026) ("The mandatory detention statute separates deportability, governed by section 1226(C)(1)(B)–(C), and inadmissibility, which is governed [by] section 1226(C)(1)(A) and (D)."). Therefore, Section 1226(c)(1)(A) appears to be the relevant statutory authority under Respondents' theory of mandatory detention. Although Respondents claim that Petitioner is deportable under 1226(c)(1)*(B)* because he "committed an offense

described in 8 U.S.C. § 1227(a)(2)(B)(i)," Dkt. No. 4 at 5–6, this cannot be the case. Respondents' briefing is exceptionally unhelpful because it fails to identify the correct detention authority and makes no effort to engage with Petitioner's arguments relating to application of the categorical approach, but the Court nevertheless addresses whether 8 U.S.C. § 1226(c)(1)(A) applies to Petitioner.

As discussed above, 8 U.S.C. § 1226(c)(1)(A) mandates detention of a noncitizen who is "inadmissible by reason of having committed any offense covered in section 1182(a)(2)[.]" As relevant here, 8 U.S.C. § 1182(a)(2)(A) lists the following offenses: (1) "a crime involving moral turpitude" or (2) "a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21)[.]" 8 U.S.C. § 1182(a)(2)(A)(i)(I)–(II). "Controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6); *see* 21 U.S.C. § 812 ("Schedule of controlled substances").

Petitioner contends in his petition that none of his convictions trigger that mandatory detention authority. Dkt. No. 1 at 11–14. First, he argues that his conviction for "Possession of a Controlled Substance Schedule II" in violation of former Oregon Revised Statutes Section 475.992(4)(b) is "not categorically a conviction for a violation of a law relating to a federally controlled substance" because Oregon's Schedule II in 2003 "reached substances that were not controlled substances under federal law[.]" *Id.* at 11–12. Second, he argues that his conviction for criminal impersonation in the first degree in violation of Section 9A.60.040(1) of the Revised Code of Washington is not a crime of "moral turpitude." *Id.* at 12–13. He contends that since the mens rea of the crime required the perpetrator to act with "intent to defraud another *or for any other unlawful purpose*," the crime is not necessarily a "crime involving moral turpitude" because the "any other unlawful purpose" option may reach "conduct involving neither fraud nor moral

turpitude[.]" *Id.* at 13. The Court agrees with both arguments, and reiterates that Respondents did not engage substantively with either. *See generally* Dkt. No. 4.

Courts use the "categorical approach" to analyze crimes impacting noncitizen's rights under the Immigration and Nationality Act. *Pereida v. Wilkinson*, 592 U.S. 224, 233 (2021). Under this approach, "a court does not consider the facts of an individual's crime as he actually committed it"; "[i]nstead, a court asks only whether an individual's crime of conviction necessarily—or categorically—triggers a particular consequence under federal law." *Id.* If a criminal statute lists "multiple, stand-alone offenses, some of which trigger consequences under federal law, and others of which do not," courts then use a "modified" categorical approach, "reviewing the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction." *Id.* at 235 (citation modified). When applying the categorical approach, courts "consider the law that the petitioner was convicted of violating as it applied at the time of conviction." *Dominguez v. Barr*, 975 F.3d 725, 735 n.3 (9th Cir. 2020).

1. <u>The Controlled Substances Conviction</u>

Petitioner's Oregon conviction does not qualify categorically as a "violation . . . relating to a controlled substance (as defined in Section 802 of title 21)[.]" 8 U.S.C. § 1182(a)(2)(A)(i)(II). The relevant version of Oregon Revised Statutes Section 475.992(4)(b) declared it "unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice"; Petitioner was convicted of possessing a "controlled substance in Schedule II." Dkt. No. 1-1 at 16–18. Under the categorical approach, the "Government must connect an element of the [noncitizen's] conviction to a drug defined in § 802." *Mellouli v. Lynch*, 575 U.S. 798, 813 (2015) (citation modified) (construing Section

1227(a)(2)(B)(i), which is relevant to deportable noncitizens, but which similarly cross-references 21 U.S.C. § 802).

Here, Petitioner is correct that several substances listed under Oregon's Schedule II at the time of his conviction are not included in the federal schedule. *Compare* Or. Admin. R. 855-080-0022(7) (2002) (listing anthranilic acid, ephedrine, hydriodic acid, methylamine, methylformamide, lead acetate, phenylacetic acid, and pseudoephedrine) *with* 21 U.S.C. § 812 (listing none of those chemicals)[5]; *see also* 8 U.S.C. § 802(34) (defining "list I chemical"—as distinct from "controlled substance"—to include several of those chemicals). Because Oregon's list of Schedule II substances was broader than the federal schedule, Petitioner's conviction for violation of Section 475.992(4)(b) of the Oregon Revised Statutes could have been for possession of a controlled substance other than a controlled substance "as defined in section 802 of title 21." 8 U.S.C. § 1182(a)(2)(A)(i)(II); *see also Lazo v. Wilkinson*, 989 F.3d 705, 710 (9th Cir. 2021) (explaining that section 11350(a) of the California code was not a categorical match because it relied on an overbroad list of controlled substances not similarly regulated by the federal statute).

Furthermore, even assuming without deciding that the Oregon criminal statute is divisible such that the modified categorical approach applies, the record of Petitioner's proceedings and conviction, Dkt. No. 1-1 at 16–28, does not indicate which controlled substance he was convicted of possessing. Although Respondents point to Petitioner's testimony during his immigration court proceedings that he was convicted of possession of cocaine, Dkt. No. 4 at 9 (citing Dkt. No. 6 at 3), "[a noncitizen's] description of his crimes is not an acceptable source of evidence under the modified categorical approach." *Cervantes v. Holder*, 772 F.3d 583, 588 (9th Cir. 2014); *see also Pereida*, 592 U.S. at 235 (Courts using the modified categorical approach "may consult 'a limited

[5] The version of Section 812 in effect at the time of Petitioner's Oregon conviction also did not list any of those chemicals.

class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'" (quoting *Mathis v. United States*, 579 U.S. 500, 505–06 (2016)); *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1129 n.7 (9th Cir. 2007), *abrogated on other grounds by Young v. Holder*, 697 F.3d 976, 979 (9th Cir. 2012) (en banc).

Based on the record before the Court, Petitioner's controlled substances conviction was not categorically a crime implicated by federal immigration law, *Pereida*, 592 U.S. at 233, and cannot serve as the basis for his ongoing detention under 8 U.S.C. § 1226(c)(1)(A). *See Mellouli*, 575 U.S. at 813; *see also Vargas-Lopez v. Warden*, No. 1:26-CV-05014 DAD SCR, 2026 WL 3082858, at *4 (E.D. Cal. Oct. 15, 2026) ("Without information regarding the specific controlled substance, the Court cannot perform the required analysis to determine if he is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) and therefore subject to mandatory detention."); *Jimenez v. Warden of the California City Det. Ctr.*, No. 1:26-CV-2924 DJC CSK, 2026 WL 1893672, at *5 (E.D. Cal. July 1, 2026), *report and recommendation adopted*, No. 1:26-CV-2924 DJC CSK, 2026 WL 2007021 (E.D. Cal. July 10, 2026) ("Because the Court is unable to determine whether petitioner's 2017 conviction 'relate[s] to a controlled substance'" as defined under 8 U.S.C. § 1182(a)(2)(A)(i)(II), "this Court cannot find that petitioner is subject to mandatory detention under § 1226(c) as respondent argues.").

2. <u>Criminal Impersonation Conviction</u>

Among Petitioner's Washington state convictions is "Criminal Impersonation-1" in violation of Section 9A.60.040(1) of the Revised Code of Washington.

At the time of Petitioner's conviction, Section 9A.60.040(1) stated:

> A person is guilty of criminal impersonation in the first degree if the person:
>
> (a) Assumes a false identity and does an act in his or her assumed character with intent to defraud another *or for any other unlawful purpose*; or

> (b) Pretends to be a representative of some person or organization or a public servant and does an act in his or her pretended capacity with intent to defraud another *or for any other unlawful purpose*.

Wash. Rev. Code 9A.60.040(1) (2003) (emphases added). As mentioned above, Petitioner argues that the qualifier "or for any other unlawful purpose," which attaches to both subsections, "reaches conduct involving neither fraud nor moral turpitude[.]" Dkt. No. 1 at 13. The Court agrees.

"In determining whether the conduct proscribed by [a] statute involves moral turpitude, [courts] apply the categorical approach . . . , comparing the elements of the state offense to those of the generic [crime involving moral turpitude] to determine if there is a categorical match." *Linares-Gonzalez v. Lynch*, 823 F.3d 508, 514 (9th Cir. 2016) (citing *Taylor v. United States*, 495 U.S. 575, 598–602 (1990)). A state offense is broader than the applicable generic crime as defined by federal law when "there is a 'realistic probability' that the statute would be applied to acts not covered by the generic federal statute." *Linares-Gonzalez*, 823 F.3d at 514 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

The federal generic definition of a crime involving moral turpitude ("CIMT") is "a crime involving fraud or conduct that (1) is vile, base, or depraved and (2) violates accepted moral standards." *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 626 (9th Cir. 2010). "Crimes of moral turpitude generally involve some evil intent," and "non-fraudulent crimes of moral turpitude generally involve an intent to injure, actual injury, or a protected class of victims." *Hernandez-Gonzalez v. Holder*, 778 F.3d 793, 802 (9th Cir. 2015) (citation modified); *see also Barrera-Lima v. Sessions*, 901 F.3d 1108, 1122 (9th Cir. 2018) ("We have repeatedly cautioned that under our definition, crimes other than fraud 'must be more than serious; [they] must offend the most fundamental moral values of society, or as some would say, shock the public conscience.'" (quoting *Hernandez-Gonzalez v. Holder*, 778 F.3d 793, 801 (9th Cir. 2015)). Where an act is only statutorily prohibited, rather than inherently wrong, the act generally will not involve moral

turpitude. *Beltran–Tirado v. INS,* 213 F.3d 1179, 1184 (9th Cir. 2000) (noting difference between *malum prohibitum,* an act only statutorily prohibited, and *malum in se,* an act inherently wrong).

The Court has been unable to locate any case addressing whether a conviction under Section 9A.60.040(1) constitutes a CIMT. However, numerous courts have addressed analogous statutes. For example, in *Zarate v. U.S. Attorney General*, the Eleventh Circuit held that 42 U.S.C. § 408(a)(7)(B)—which criminalizes (1) a false representation of a social security account number (2) with intent to deceive (3) for any purpose—is not categorically a CIMT. 26 F.4th 1196, 1202, 1206–07 (11th Cir. 2022). The court reasoned that "[t]he intent to deceive is not equivalent to the intent to defraud, which generally requires an intent to obtain some benefit or cause a detriment," and "[t]here are many situations in which a person may have the intent to deceive without having the intent to defraud." *Id.* at 1206 (quoting *Ahmed v. Holder*, 324 F. App'x 82, 84 (2d Cir. 2009)). "Under the categorical approach, that means a violation of this provision does not have fraud as an element or ingredient and therefore is not necessarily a CIMT"; if the intent to deceive "is not for the purpose of obtaining a benefit or causing a detriment, moral turpitude is not automatically involved." *Id.* at 1207. The Second Circuit reached the same conclusion in *Ahmed v. Holder*, holding that the "act of misrepresenting a number as [a person's] social security number, 'for any . . . purpose,'" did not rise to the level of "being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." 324 F. App'x at 84 (citation modified). The Seventh Circuit also concluded that Section 408(a)(7)(B) is not categorically a CIMT, and observed that:

> It seems inconsistent with the terms "base, vile, or depraved" to hold that an unauthorized immigrant who uses a false social security number so that she can hold a job, pay taxes, and support her family would be guilty of a crime involving moral turpitude, while an unauthorized immigrant who is paid solely in cash under the table and does not pay any taxes would not necessarily be guilty of a crime involving moral turpitude. A rule that all crimes that involve any element of deception categorically involve moral turpitude would produce results at odds with

> the accepted definition of moral turpitude as conduct that is "inherently base, vile, or depraved."

*Arias v. Lynch*, 834 F.3d 823, 829 (7th Cir. 2016); *see also id.* at 827 ("There need not be any evil intent in the hypothetical about a parent using a false social security number to secure medical care for a sick child, unless deception without more, no matter how admirable the goal, involves evil intent (i.e., moral turpitude)."); *Ahmed*, 324 F. App'x at 84 ("[A] person who secures employment on the basis of a false social security number has the intent to deceive the employer and violates § 408(a)(7)(B), but has not necessarily acted with the intent to defraud the employer or the government.").[6]

Applying the categorical approach "implicates two inquiries—one factual (what was [the petitioner's] crime of conviction?), the other hypothetical (could someone commit that crime of conviction without fraud?)." *Pereida*, 592 U.S. at 234. Here, Petitioner was convicted of "Criminal Impersonation-1," a gross misdemeanor. Dkt. No. 1-1 at 33. For the reasons described above with respect to Section 408(a)(7)(B), someone could commit Criminal Impersonation in the first degree without fraud. Like Section 408(a)(7)(B), criminal impersonation in the first degree does not necessarily require an intent to defraud. It does not even require an intent to deceive—unlike Section 408(a)(7)(B). Instead, it "requires only a pretense and an act with unlawful purpose." *State v. Johnson*, 1997 WL 87098, at *3 (Wash. Ct. App. 1997). As with Section 408(a)(7)(B), a non-citizen might use someone else's social security number to get a job or to obtain medical services to which he is not legally entitled—thereby "[a]ssum[ing] a false identity and . . . act[ing] in [the] assumed character . . . for an[] . . . unlawful purpose"—without exhibiting moral turpitude. *See Arias*, 834 F.3d at 827 ("The broad 'any other purpose' term in § 408(a)(7)(B) makes it difficult

[6] The Ninth Circuit has also held that a violation of Section 408(a)(7)(B) is not categorically a CIMT. *Beltran-Tirado*, 213 F.3d at 1183–84 (reasoning that Congress could not have intended violations of Section 408(a)(7)(B) to be crimes involving moral turpitude because of legislative history indicating that unauthorized immigrants exempt from prosecution under Section 408 under an amnesty program should not be considered to have exhibited moral turpitude).

to see how a violation of the statute could *categorically* involve evil intent or be *malum in se*."); *cf. Linares-Gonzalez*, 823 F.3d at 517 (finding that sections of California law were not categorically crimes of moral turpitude when the legislature had added "the 'for any unlawful purpose' language," which "greatly expanded the range of unlawful purposes for which a perpetrator could be found guilty of identity theft").

This conclusion is consistent with decisions from various circuit courts holding that identity theft laws were not categorically CIMTs when they lacked any ingredient of fraud or interference with a government function. In *Nunez-Vasquez v. Barr*, the Fourth Circuit held that a law prohibiting use of "identification documents or identifying information of another person, whether that person is dead, or alive, or of a false or fictitious person, to avoid summons, arrest, prosecution, or to impede a criminal investigation," did not "ha[ve] the required moral reprehensible conduct to qualify as a CIMT" because—like Section 9A.60.040(1)—it did not (1) "require perpetrators to intend to impair or obstruct a government function through deceit because an individual can violate the statute by misleading a private person," or (2) "require a perpetrator to use the name of an actual person[.]" 965 F.3d 272, 284–85 (4th Cir. 2020). Similarly, in *Ibarra-Hernandez v. Holder*, the Ninth Circuit held that the violation of an identity theft statute through the use of a "fictitious person's name—say, Mickey Mouse—and a non-existent Social Security number solely for the purpose of getting a job, and not with the intent to cause loss to anyone" was not categorically a CIMT. 770 F.3d 1280, 1282 (9th Cir. 2014). In *Flores-Molina v. Sessions*, the Tenth Circuit held that a law criminalizing giving "false information to an officer or employee of the city . . . concerning the identity of any person . . . connected with, . . . or concerning the manner of the commission of, any act" was not categorically a CIMT because—as with Section 9A.60.040(1)—a statement violating the law at issue "need not involve fraud, cause harm to the government or anyone else, obtain a benefit for the speaker, or be given with the intent to achieve

any of these ends." 850 F.3d 1150, 1168 (10th Cir. 2017). Finally, the Fourth Circuit found that a Delaware criminal impersonation statute was not a CIMT because someone could violate the statute by misleading a private person, and the statute did not require a perpetrator to use the name of an actual person, making the statute "insufficiently 'morally reprehensible' to satisfy the actus reus requirement." *Belong v. Garland*, No. 22-1141, 2024 WL 33676, at *2 (4th Cir. Jan. 3, 2024). Similar to Section 9A.60.040, the Delaware statute criminalized "[i]mpersonat[ing] another person and do[ing] an act in an assumed character intending to obtain a benefit or to injure or defraud another person[.]" Del. Code Ann. tit. 11, § 907(1).

In sum, Section 9A.60.040(1) "is simply written too broadly to capture *only* depraved conduct that shocks the public conscience." *Barrera-Lima*, 901 F.3d at 1122. Because none of Petitioner's crimes are CIMTs, he is not subject to mandatory detention under 8 U.S.C. § 1226(c).[7]

**D. Remedy**

Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). Here, Respondents have failed to identify a valid statutory basis for Petitioner's detention, and failed to substantively respond to Petitioner's arguments regarding the appropriate classification of his offenses under the categorical approach. *See* 28 U.S.C. § 2243 (The "person having custody of the person detained . . . shall make a return certifying the true cause of the detention."). Although it appears that Petitioner could be subject to discretionary detention under Section 1226(a), Respondents do not make this argument. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Furthermore, Petitioner has been detained for over six months without a meaningful chance to contest his

[7] Because the Court grants the petition on the Counts II and III stated in the petition, it need not address the other counts.

unlawful confinement. Accordingly, under these unique circumstances, release is warranted. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Eve v. Semaia*, No. 5:26-CV-4719-DSR, 2026 WL 2647969, at *4 (C.D. Cal. Sept. 8, 2026) (ordering release where respondents failed to supply a lawful authority for petitioner's detention); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. 2025) (granting immediate release in light of finding no applicable basis for noncitizen's detention); *Crispin M. C. v. Noem*, No. 1:25-CV-01487-KES-HBK (HC), 2026 WL 70553, at *7 (E.D. Cal. Jan. 8, 2026) (same).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the petition for a writ of habeas corpus, Dkt. No. 1, and orders as follows:

(1) Respondents shall release Petitioner from custody within 24 hours under terms consistent with Section 1226(a);

(2) The parties shall file a Joint Status Report by October 29, 2026, confirming that Petitioner has been released;

(3) Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 428 (3d Cir. 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja,* 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not

compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 27th day of October, 2026.

Lauren King
United States District Judge